# THE OPHELIA.[1]

## THE MIDDLETOWN.

## KINNEAR *v.* STATEN ISLAND RAPID TRANSIT R. Co.

*(District Court, S. D. New York. January 21, 1891.)*

1. COLLISION—FOG—ANCHORED VESSEL.
   Where a ferry-boat, in a dense fog, ran into a bark, which was anchored within the prescribed limits of the anchorage ground in the bay of New York, and whose position was well known to the pilot of the ferry-boat, *held*, that the ferry-boat should have kept off the anchorage ground entirely, as she could have done, and that the ferry-boat was therefore in fault for the collision.

2. SAME—FOG-BELLS—FREQUENCY—INSPECTORS' RULE—LOOKOUT—CHANGE OF WATCH.
   A bark, lying at anchor in a fog so dense that objects could not be distinguished 50 feet distant, and in a position where boats were obliged frequently to pass near her, rang her fog bells every three or four minutes. *Held*, that in such situation there was a necessity for more frequent bells than are prescribed by the international regulations, which require the bell to be rung only once every five minutes. No whistle was noticed by those on the bark, though the ferry-boat while approaching whistled every half minute. *Held*, that the bark was also in fault for not ringing the bell as often as required by the inspectors' rules, and for bad lookout at the time of a change in the watch.

In Admiralty.  Suit for damages by collision.
*Wilcox, Adams & Macklin*, for libelant.
*Tracy, Macfarland, Ivins, Boardman & Platt*, for respondent.

BROWN, J.  Near midnight of November 6, 1890, while the libelant's bark Ophelia, shortly before arrived from sea, lay at anchor abreast of Bedloe's island, a little within the prescribed limits for anchorage ground, she was run into, in a dense fog, by the respondent's ferry-boat Middletown, bound from the Battery to Staten island, and sustained damages for which the above libel was filed.  Without discussing in detail the conflicts of testimony, I find the following faults in both:

1. The precise point where the Ophelia lay being known to the pilot of the ferry-boat, as she had passed her several times in clear weather during the 12 hours preceding, it was the duty of the ferry-boat to have kept further to the eastward, as she might and should have done, the ranges being accurately known, and there being no necessity for the ferry-boat to cross any part of the prescribed anchorage ground, and there being abundant water to the eastward of its exterior limit.  *The Bedford*, 5 Blatchf. 200; *The Exchange*, 10 Blatchf. 168.

2. The bell upon the Ophelia was not sufficiently rung to answer the requirements of reasonable prudence, and of a reasonable necessity, when she lay anchored in such a fair way in a dense fog.  The fog was so dense that objects, excepting lights, could not be distinguished 50 feet distant; and lights at a very short distance only, probably not exceeding 200 feet.  The evidence does not show that at the time the ferry-boat

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

was approaching the bark, her bell was sounded oftener than once in four minutes. None was heard on the ferry-boat, though she approached at very moderate speed, and her officers were listening carefully for signals. Such an interval is wholly too great for the necessities of such a situation. Ferry-boats are obliged to make their trips even in the densest fog. The ebb tide runs from two to three knots at its strength, and it is impossible that ferry-boats retaining necessary control of their movements in such a tide should go less than four or five knots over the ground. Under such circumstances bells sounded once in three or four minutes only, are too infrequent to be of much use. The frequency with which boats were obliged to pass in this region was known to the bark, or ought to have been known by observation, if not already familiar to her master; and there was therefore obvious necessity for more frequent bells than those prescribed by the international regulations, namely, at least once in five minutes. The rule of the supervising inspectors (page 182) requires the bell to be sounded at intervals of not more than two minutes. I have no doubt, moreover, that fog-signals from the ferry-boat were sounded, as her witnesses testify, at intervals of less than half a minute. The rule last referred to requires them to be sounded at intervals of not more than one minute. The ferry-boat, at the time of collision, knew she was about meeting and passing her sister boat coming up from Staten island; yet the witnesses for the bark all testify that they heard no whistles from the Middletown, and consequently no response by the bell was given to any such signals. The collision occurred at the time of the change of the midnight watch on board the bark. The ship's time was about three-quarters of an hour in advance of the local time. The proper watch was very tardy in getting on deck, and the duty of sounding the bell seems to have remained with the second mate; and there is incidental testimony of considerable weight, which, coupled with the delays in the proper change of watch, may serve to explain the fact, of which I am also satisfied, that sufficient attention was not given at the time to the signals of the Middletown as she was approaching near. The damages and costs must therefore be divided.